UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v | ) | Case No.: CR 4:13-028 |
| | ) | |
| SEAN MICHAEL CLARK, | ) | |
| Defendant | ) | |


**DEFENDANT SEAN MICHAEL CLARK'S
FIRST SUPPLEMENTAL DISCOVERY MOTION WITH REQUEST
FOR SPECIFIC _KYLES_ AND _BRADY_ INFORMATION**


Comes Now the Defendant, SEAN MICHAEL CLARK, by and through undersigned counsel who pursuant to the dictates of Kyles v. Whitley, 115 S.Ct. 1555 (1995), Brady v. Maryland, 373 U.S. 83 (1963), United States v. Agurs, 427 U.S. 97 (1976), United States v. Bagley, 473 U.S. 667 (1985), and Fed. R. Crim. P. 16, respectfully moves for an entry of an ORDER requiring the government to disclose and provide the following specific information and materials known (or that with the exercise of due diligence should be known) to the government. This information is favorable to the Defendant on the issues of guilt or punishment, including impeachment information and other material and evidence tending to discredit the government's witnesses, in addition to any other matters known to the government that may be exculpatory or otherwise favorable to the defendant.

Defendant requests the following documents and information regarding any and every cooperating witness in this case:

A.     The name and address of each cooperating witness;

B.     The case number and name of the prosecutions in which the cooperating witness utilized in this case has previously been utilized as a cooperating witness;

C.     The case names and numbers of any trials or evidentiary hearings at which the cooperating witness has testified concerning his own prior criminal activity, payments or rewards provided him by the government, efforts made to induce others to participate in criminal activity or other purported law enforcement-related matters;

D.     Any ledger, sheet, or other document which details the sums paid to the cooperating witness or his family in this and other cases in which the informant assisted the government and the purpose of each such payment;

E.     Any information, whether or not memorialized in a memorandum, agent's report or other writing, regarding promises of immunity, leniency, preferential treatment or other inducements made to the cooperating witness or any family member, friend or associate of the informant in exchange for the informant's cooperation, including the dismissal or reduction of charges, assisting in matters of sentencing or deportation, promises or expectancies regarding payments for expenses or testimony or eligibility for any award or reward; In addition to information regarding payments, promises of

immunity, leniency, preferential treatment or other inducements made to the government witnesses, any records or information regarding payments, promises of immunity, leniency, preferential treatment offered or afforded to any family member, friend or associate of an prospective witness in exchange for said witness cooperation;

F.     Any information or records concerning any actual or implied threats of investigation or prosecution (including deportation, exclusion, etc., by INS) made by the government to any prospective government witness or family member or associate of the witness, including information as to the underlying conduct precipitating such investigations;

G.     Any statement made, information or document provided by a prospective government witness that conflicts in part or in whole with: (1) the statement of another prospective witness, (2) a prior statement made by the same government witness with regard to the subject matter of the expected trial testimony of witness, or (3) any other document or witness;

H.     The name and current whereabouts of any witness to the underlying events of this case whom the government does not anticipate calling as a witness at trial and a copy of any statement made by or summary of an interview with such a witness;

I.      Any report, document or information which details the criminal activities of the cooperating witness which were undertaken by him without the authority or approval of the government, but for which the government has

elected, formally or informally, not to prosecute;

J.    FBI rap sheet, NCIC printout , NADDIS, EPIC, NLETS,  ATS, TECS, IDENT and any other records available to the government reflecting the arrest, conviction and investigative history of the cooperating witness;

K.    Information concerning prior misconduct by the cooperating witness in the performance of his role as an informant including: any prior refusal of the informant to testify for or assist the government; any prior allegation that the informant entrapped another person to commit an offense or made false statements in connection with a criminal investigation; and any prior "blackballing" of the informant by any law enforcement agency;

L.    Information concerning misconduct by the cooperating witness other than in his role as a cooperating witness, including misconduct that reflects a lack of candor, truthfulness or law-abiding character of the informant, such as uncharged criminal conduct or fraud'

M.    All information, records and transcripts which in any way indicate or reveal that any prospective government witness, in connection with this or any other case, has provided untruthful, false, misleading, incomplete, or inaccurate information or testimony to:

1.    Any state or federal law enforcement officer or agency,

2.    Any state or federal grand jury,

3.    Any state or federal trial court while testifying at trial and/or any related or preliminary proceeding;

N.     Information reflecting the nature and extent of assets obtained by the informant in connection with his illegal activities over the past ten years;

O.     Any "records" maintained by law enforcement agencies relating to the cooperating witness utilized in this case, including records that the witness was:

    1.     Given a code name,

    2.     Given assumed/false identity,

    3.     Reasons for cooperation,

    4.     Given a polygraph exam,

    5.     Briefed on entrapment,

    6.     Contracts executed with any law enforcement agency,

    7.     Any release forms executed by the witness,

    8.     Records revealing the witness was advised to pay Federal Income Taxes,

    9.     Records that he could not violate the law,

    10.    Records which require him to protect his false identity,

    11.    Records that the witness cannot use any illegal drugs,

    12.    Records that the witness consented to recording any conversation with any party; and

    13.    Contingency fee agreement.

P.     If given a polygraph exam, the results of any polygraph examination performed on any potential government witness as well as any information

concerning the failure of any potential government witness to submit to a polygraph examination;

Q.   Any government agency files or other information revealing matters relevant to the cooperating witness' credibility, mental or physical health, narcotic or alcohol use, or any other dependency;

R.   All information and records revealing any potential impairment of the capacity of any prospective government witness to observe, recollect and testify about the events giving rise to the charges filed in this case including impairments of sight, hearing, memory, language, or any other physical or psychological disability;

S.   All information and records indicating that any prospective government witness (1) may have suffered from any mental or emotional disease, disorder, illness, or defect at any time during the time span alleged in the indictment filed in this case, or (2) sought or received treatment for any such mental or emotional disease, disorder, illness, or defect at any time within the past five years;

T.   All information and records indicating that the prospective government witness (1) may have used cocaine, marijuana, another controlled substance, used alcohol to excess at any time during the time span alleged in the indictment filed in this case, or (2) sought or received treatment for any substance abuse problem (including alcohol) at any time within the past five years.

U.    Applicable records of the United States Probation Department if the witness has been placed on probation or a Pre-Sentence Investigation "PSI" has been conducted.

## MEMORANDUM OF LAW

### The Use of Informants

"[T]he use of informants to investigate and prosecute persons is fraught with peril." ... "By definition, criminal informants are cut from untrustworthy cloth and must be managed and carefully watched by the government and the courts to prevent him from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime, and from lying under oath in the courtroom." **_United States v. Bernal-Obeso_**, 989F.2d 331 (9th Cir. 1993).

> A prosecutor who does not appreciate the perils of using rewarded criminals as witnesses risks compromising the truth-seeking mission of our criminal justice system...Because the government decides whether and when to use such witnesses, and what, if anything, to give them for their service, the government stands uniquely positioned to guard against perfidy.  By its action, the government can either contribute to or eliminate the problem.  Accordingly, we expect prosecutors and investigators to take all reasonable measures to safeguard the system against treachery.  **_United States v. Bernal-Obeso_**,

989 F.2d 331, 333-34 (9th Cir. 1993) (Citations omitted).

Evidence which is material either to the guilt or punishment of the defendant must be disclosed to the defense in a timely manner. ***Brady . Maryland***, 373 U.S. 83, 87 (1963). Evidence that will "play a rule in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal" must be provided by the government. ***Untied States v. Lloyd***, 992 F.2d 348, 351 (D.C. Cir. 1993) See also ***United States v. Bagley***, 473 U.S. 667 (1985).

"Taken together, this group of constitutional privileges delivers exculpatory evidence into the hand of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of the criminal justice system." ***California v. Trobetta***, 467 U.S. 858, 867 (1984).  If this material evidence exists in the hands of the government or an agent of the State, the failure to disclosed this evidence is a violation of the precepts of ***Brady v. Maryland***, supra; see also, ***Kyles v. Whitley***, 115 S.Ct. 1555, 1567 (1995).  "In fact, an individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Id.


**Prior Utilization of Informant**

Information regarding the prior utilization of the witness is material and favorable within the terms of ***Brady v. Maryland***, 373 U.S. 83 (1963), where it reveals the informant's modus operandi in setting up criminal transactions and in inducing other persons to participate in criminal activity. ***Johnson v. Brewer***, 521 F.2d 556, 563 (8th Cir. 1975). Experience has shown that where an informant utilizes undue persuasion in one case to

induce an individual to participate in a criminal offense, he is likely to use the same tactic in other case. ***United States v. McClure***, 546 F.2d 670, 673 (5th Cir. 1977).  In ***McClure***, the conviction was reversed and remanded due to the trial court's exclusion of "Fed. R. Evid. 404(b) evidence of a systematic campaign" by the informant to induce other persons to engage in illegal activity.  Id. 546 F.2d 672, 673, "[I]n the case before us it was the defendant who sought to introduce evidence of the informant's scheme.  His right to present vigorous defense required the admission of the proffered testimony."  Id.


## PREFERENTIAL TREATMENT GIVEN AND THREATS MADE TO INFORMANT, INCLUDING MONIES PAID AND PROMISES OF FINANCIAL AWARD

By this request, the defendant seeks a full record of all considerations given to any informant or government witness as a result of his or her cooperation in this case as well as any other case in which the informant or government witness has provided service.  Such detailed information and records are needed to demonstrate the motive of the witness and are discoverable. Giglio v. United States, 405 U.S. 150 (1992); United States v. Williams, 954 F.2d 668 (11th Cir. 1992).

The witness' motive to testify in favor of one party and against another is a matter open to discovery and introduction into evidence.  Fed. R. Evid. 608.  The Eleventh Circuit Pattern Criminal Jury Instructions, Special Instructions 1.1, 1.2, and 1.3, highlight the importance of such evidence in judging the credibility of the informant or witness.

For example, a paid informer, or witness who has been promised he will not be charged or prosecuted, or a witness

who hopes to gain more favorable treatment in his own case,

may have a reason to make a false statement because he wants

to strike a good bargain with the government.

11th Circuit Pattern Criminal Jury Instructions, Special Instruction 1.1.

Evidence that the government has threatened a potential witness to obtain the witness' cooperation, is admissible, and may demonstrate unconstitutional interference with the defendant's right to free access to witnesses.  United States v. Hendricksen, 564 F.2d 197, 198 (the Cir. 1977; United States v. Heller, 830 F.2d 159, 154 (11th Cir. 1987).

The Defendant further seeks information as to threats or promises made to any informant or government witness or his family to motivate his or her cooperation.  The threats/benefits evaluation is not limited to the informant alone.  United States v. Partin, 403 F.2d 750, 757 (5th Cir. 1974).  Such Giglio material is discoverable to allow defense counsel to establish possible bias or hostility of the informant.  It is proper impeachment to question a cooperating witness about the dismissal of charges against him or other preferential treatment given to his family.  United States v. Nickerson, 669 F.2d 1015, 1018 (5th Cir. 1982).

Similarly, unconsummated promises of financial or other awards or benefits are discoverable as to the informant including any Contingency Fee Agreement.  United States v. Cuellar, 96 F.3d 1179 (9th Cir. 1996); United States v. Friedman, 854 F.2d 535, 563 (2nd Cir. 1988).  (Holding that the effect of a Contingency Fee Agreement on the witness' credibility is an issue for the jury).  Thus, where the informant harbors an expectation of a future financial award for his services in obtaining a conviction, such evidence is crucially

important to the defense.  United States v. Williams, 954 F.2d 668, 672 (11th Cir. 1992).

Defendant seeks disclosure of any promise, formal or informal, that would lead the

informant to have an expectation of an award in the instant case.[1]

## CONFLICTING WITNESS STATEMENTS

The Conflicting statement of a witness must be turned over to the Defendant.  Kyles

v. Whitley, 115 S.Ct. 1155 (1995).  In Schneider v. Estelle, 552 F.2d 593, 595 (5th Cir. 1977),

the court held that the government's failure to disclose an eyewitness' prior statement that

was inconsistent with the testimony of the government's key trial witness was reversible

error.  Also, in United States v. Martino, 648 F.2d 367, 384 (5th Cir. 1981)  The court stated:

> As impeaching evidence, the prior inconsistent statement
> would fall within disclosure requirements because Brady
> encompasses impeachment evidence as well as evidence
> favorable to the accused on the issue of guilt.

Additionally, the Court in Jones v. Jago, 575 F.2d 1164, 1166 (6th Cir. 1978), cert

denied 439 U.S. 882 (1978), found that an eyewitness' statement to the government, while

not expressly exonerating the defendant, and made no reference to the defendant's

presence or participation in the offense, was Brady material and that the failure to disclose

such a statement required the reversal of the conviction. Id. at 1164.  This type of Brady

material, though negative or neutral in character, may be the key to a favorable defense.

---

[1] 28 U.S.C. 524 and 19 U.S.C. § 1619 allows the government at the government's discretion to pay informants, often referred to as moiety, 25% of the value of the property forfeited to the government or $250,000.00 for each such forfeiture.  There is no prohibition paying more than $250,000.00 provided payments involve more than one case.

Our courts have held that a report of a witness interview that reveals circumstantial evidence that a person other than the defendant may have been the actual perpetrator of the offense is <u>Brady</u> material.  <u>Troedel v. Wainwright</u>, 557 F.Supp. 1456 (S.D. Fla. 1986).

Even though such a defense-favorable or neutral statement may otherwise be protected from disclosure under the <u>Jencks</u> Act, the government is under a due process obligation to disclose the information to the defense before trial and in timely manner. <u>United States v. Campagnulo</u>, 592 F.2d 852, 859 (5th Cir. 1979).

## INFORMANT'S ARREST AND CONVICTION RECORD, UNAUTHORIZED CRIMINAL ACTIVITY AND OTHER MISCONDUCT

An informant's history of criminal activity and other misconduct is relevant to the consideration of his credibility, bias motive and modus operandi, [It is part of the defense in this case that the informant improperly created a crime and lured the defendant into the alleged criminal activity.] [This case raises both the issue of entrapment and the defense of government overreaching.  The question of who initiated the criminal activity and whether the defendant was misled are primary issues for the defendant.]

The informant's history and patter of criminal activity and misconduct serve to illustrate the methods normally employed by the informant to achieve his goals.  Such evidence "might easily extend beyond that of mere impeachment."  <u>United States v. Espinosa-Hernandez</u>, 918 F.2d 911, 914 (11th Cir. 1990).  In <u>Espinosa-Hernandez</u>, the Eleventh Circuit, reversed the district court's failure to grant full discovery as to an undercover agent's misconduct relating to the handling of informants.  918 F.2d at 914; <u>Cf</u>.

Haber v. Wainwright, 765 F.2d 1520, 1523 (11th Cir. 1985) (prior criminal conduct relevant where witness may have been promised immunity).

Along the same line, the courts have held evidence of the unreliability of an informant witness to be discoverable and highly relevant information.  For example, information regarding prior or contemporaneous perjury or bizarre testimony of an informant would be discoverable.  United States v. Mesarosh, 352 U.S. 1 (1956).

## PRESENTENCE INVESTIGATION "PSI"

While a Pre-Sentence Investigation Report in the hands of the court or the probation office is not usually producible in response to a discovery motion, see e.g. United States v. Trevino, 556 F.2d 1265, 1270-1271 (5th Cir. 1977), the courts that have directly addressed the issue have uniformly recognized that such a report is producible if it is in the hands of the prosecutor and if, upon in camera review, the trial judge determines that it contains exculpatory or impeachment material.  See e.g. United States v. Jackson, 978 F.2d 903, 909 (5th Cir. 1992), cert denied, 113 S.Ct. 2429 (1993) (holding that defendant has a right to exculpatory or impeachment material that is contained in [witness] presentence reports as determined by the district court upon in camera review); United States v. Moore, 949 F.2d 68, 71=72 (2nd Cir. 1991), cert denied, 112 S.Ct. 1678 (1992) (approving in camera review of a presentence report to determine if it contains any exculpatory or impeaching material); United States v. DeVore, 839 F.2d 1330, 1332-1333 )8th Cir. 1988) (portion(s) of a presentence report determined by the court, upon in camera review, to contain exculpatory or impeachment material are discoverable); United States v. Anderson, 724 F.2d 506, 598 (7th

Cir. 1984P (same); United States v. Figurski, 545 F.2d 389, 392 (4th Cir. 1976) (same).[2]

## U.S. PROBATION RECORDS

The Defendant has a due process right, to material contained in the files of the U.S. Probation Office if that material bears on the credibility of a significant witness.  United States v. Strifler, 851 F.2d 1197, 1201 (9th Cir. 1988), cert denied, 489 U.S. 1032 (1989).

## FEDERAL INCOME TAX RETURNS

The defendant specially requests the Federal Income Tax records of any informant or cooperating witness for each year in which any law enforcement agency provided compensation of any type.  United States v. Shaffer, 789 F.2d 682, 688-689 (9th Cir. 1986).

Federal law enforcement agencies require informants to pay federal income taxes on monies received. See Drug Enforcement Manual, ("DEA") Chapter 66, § 6612.31.

> The controlling Special Agent will advise all cooperating individuals that they must file Federal income tax returns to include all payments, awards and rewards paid to them by DEA.  In addition, the controlling Special Agent will advise the cooperating individual that all payments must be reported as "other income" on their Federal income tax returns, and it will

---

[2] Insofar as a witness' presentence report may constitute or contain "a statement" within the meaning of the Jencks Act, it may also be subject to jencks Act production at the appropriate time – assuming, again, that, as here, the report is "held by the prosecution."  See United States v. Sasser, 971 F.2d 470, 479-480 (10th Cir. 1992); United States v. Dansker, 537 F.2d 40, 61 (3rd Cir. 1976), cert denied, 429 U.S. 1038 (1977).

be their responsibility to obtain receipts and other supporting documentation to offset the legitimate expenses from income for possible audit by the Internal Revenue Service. Special Agents will advise all cooperating individuals that their tax liability is a matter strictly between them and the Internal Revenue Service. A statement attesting to this policy will be documented on the back of the DEA-202. Special Agents will remind cooperating individuals of this policy when any payment is made.

The defendant is entitled to these records since he has a good faith basis to believe that the informant has not paid the proper taxes or has misrepresented his earnings in violation of federal law.

## REVIEW OF GOVERNMENT WITNESS' PERSONNEL FILES

The Government has a duty to examine the personnel files of <u>all</u> Federal Agents and the files of any local, state or municipal law enforcement officer who will testify and <u>must</u> disclose information favorable to the defense for impeachment purposes. <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) <u>citing</u> <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984). "In the event that the Government is uncertain about the materiality of information in its possession, it may submit the information to the trial court for an in camera inspection and evaluation..." <u>Id.</u> at 1467-68. The Government has a duty to examine the personnel files upon a defendant's request for product. <u>See</u> <u>Id.</u> at 1467. Absent such an

examination, it cannot ordinarily determine whether it is obligated to turn over the files. Henthorn, at 31.

Additionally, in United States v. Deutsch, 475 F.2d 55, 58 (5th Cir. 1973), the court compelled disclosure of a postal employee's personnel file where these records revealed the government witness may have had disciplinary problems. Similarly, in United States v. Garrett, 542 F.2d 23, 25 (6th Cir. 1976), the court reversed the defendant's convection where the district court foreclosed discovery and cross-examination as to the personnel records of the law enforcement officer. This government witness acted in an undercover capacity. His disciplinary records evidenced suspected use of narcotics and failure to submit to a urinalysis. The court noted that such evidence was relevant because the undercover agent "might well have looked upon a successful prosecution of [the defendant] as a means of hanging his [own] suspension [from duty] lifted." Id.

## REVIEW OF LAW ENFORCEMENT RECORDS

In Kyles v. Whitley, the Supreme Court held that a prosecutor has an affirmative duty to inquire promptly of all agencies involved in the case whether evidence favorable to the defense exists. Id. at 1567-69. Justice Souter described this duty as follows:

> While the definition of Bagley materiality in terms of the cumulative effect of suppression must accordingly be seen as leaving the government with a degree of discretion, it must also be understood as imposing a corresponding burden. On the one side, showing that the prosecution knew of an item of favor evidence unknown to the defense does not amount to a Brady violation, without more. But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all

such evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that the *individual prosecutor has a duty to learn of any favorable evidence known to the other acting on the government's behalf in the case*, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, failure to disclose is in good faith or bad faith, see Brady, 373 U.S. at 87, 83 S.Ct. at 1196-1197 the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

\* \* \*

This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. See Agurs, 427 U.S. at 108, 96 S.Ct. at 2399-2400 ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure"). This is as it should be. Such disclosure will serve to justify trust in the prosecutor as the "representative ... of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice will be done." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). And it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chose forum for ascertaining the truth about criminal accusations.... The prudence of the careful prosecutor should not therefore be discouraged. Id. (emphasis added).

Kyles is not the first case to put an affirmative duty on prosecutors to search out impeaching information regarding informer witnesses.  In United States v. Osorio, 929 F.2d 753 (1st Cir. 1991), the court held that a prosecutor charged with discovery obligations cannot avoid finding out what 'the government' knows [about the witness] simply by declining to make reasonable inquiry of those in a position to have relevant knowledge ....  The government, as represented by its prosecutors in court, is under a duty of inquiry information concerning the criminal past of its cooperating witnesses." Id. at 760.

The government has an institutional responsibility to canvas all sources relied upon in it's prosecution including other law enforcement agencies.  Kyles v. Whitley, 115 S.Ct. 1555 (1995).  Once placed on notice, the government has a responsibility to search all the record depositories of cooperating law enforcement agencies to obtain information for discovery purposes.  United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992).

## POLYGRAPH RESULTS

The Eleventh Circuit, in United States v. Piccinonna, 885 F.2d 1529, 1536 (11th Cir. 1989), recognized that polygraph examination results are admissible to impeach or bolster a witness' credibility.  See Fed. R. Evid. 403, 608(b).  Thus, polygraph results which tend to show that a witness has made false or conflicting statements to the government are relevant and discoverable.  Id. United States v. Posada, 57 F.3d 428 (5th Cir. 1995).  While admissibility issues may be resolved at trial, the underlying discovery material must be disclose prior to trial to allow for adequate defense preparation .Giglio v. United States, 405 U.S. 150 (1972).  Although this can be distinguished by United States v. Bartholomew, 116

S.Ct. 7 (1995), the most recent Supreme Court case on the admissibility of the polygraph, There the military tribunal did not allow introduction of a polygraph, in contrast to the Eleventh Circuit. Under United States v. Piccinonna, if there is a contract between parties then admissibility is proper.

## WITNESS' RECORD OF ARRESTS AND MISCONDUCT

Pursuant to Fed. R. Evid. 608(b), a witness may be cross-examined as to specific instance of conduct "concerning the witness' character for truthfulness or untruthfulness." Thus, some court have held that in certain circumstances, a witness may be questioned regarding prior arrests which have not led to a conviction.  United States v. Croucher, 532 F.2d 1042, 1045 (5th Cir. 1976) (informant witness' full arrest record was relevant to demonstrate a possible motive to strike a good bargain with the government).

Similarly, uncharged misconduct of a witness is fair game for impeachment on cross-examination.  United States v. Ray, 731 F.2d 1361, 1364-65 (9th Cir. 1984) (reversible error to refuse to permit cross-examination of a government witness as to alleged post-plea drug activities); United States v. Espinosa-Hernandez, 918 F.2d 911, 914 (11th Cir. 1990) (government witness' misconduct bears directly on credibility); United States v. Cohen, 888 F.2d 770, 776-77 (11th Cir. 1989) (conviction reversed where trial court excluded evidence offered under Fed. R. Evid. 404(b) that prosecution witness had previously concocted and managed a fraudulent scheme); United States v. McClure, 546 F.2d 670, 673 (5th Cir. 1977) (conviction reversed where trial court excluded evidence offered under Fed. R. Evid. 404(b) to show that informant had previously entrapped other defendants).

Wherefore the Defendant respectfully requests this Honorable Court to grant this request for Kyles and Brady Information.

Respectfully submitted this 15th day of August 2013.

PHILLIPS ROBERTS & CARSON

*s/ Bobby Phillips*

_____

BOBBY PHILLIPS, 576700
Attorney for Defendant

402 E. Liberty Street
Savannah, Georgia 31401
(912) 232-0081
Fax 912-232-9070
Email: bplaw@msn.com

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v | ) | Case No.: CR 4:13-028 |
| | ) | |
| SEAN MICHAEL CLARK, | ) | |
| Defendant | ) | |


## <u>ORDER</u>

The Defendant's Supplemental Motion for Discovery having been read and considered and for good cause shown therein, the same is granted.

SO ORDERED this _____ day of _____, 2013.


_____
**HONORABLE G. R. SMITH**
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v | ) | Case No.: CR 4:13-028 |
| | ) | |
| SEAN MICHAEL CLARK, | ) | |
| Defendant | ) | |

## **CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all parties in this case in accordance with the Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing in this Court.


This 15th day of August 2013.


PHILLIPS  ROBERTS & CARSON


*s/ Bobby Phillips*
_____
BOBBY PHILLIPS, 576700
Attorney for Defendant


402 E. Liberty Street
Savannah, Georgia 31401
912-232-0081
Fax 912-232-9070
email bplaw@msn.com