UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v ) | Docket No.:  4:13-CR-0201-1 |
| ) | |
| SEAN MICHAEL CLARK, ) | |
|     Defendant ) | |

# DEFENDANT SEAN CLARK'S
# SENTENCING MEMORANDUM

Respectfully Submitted By:

*Bobby Phillips*

_____
Robert P. Phillips, III GA 576700
Attorney For Sean Michael Clark

**INTRODUCTION**

Defendant respectfully submits this memorandum in order to provide information to assist this Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C.§ 3553 (a) in light of the **United States v Booker** (125 S. Ct. 738; 2005). As this Court knows, **Booker** restored the ability of district courts to fashion and impose a sentence tailored to the individual circumstances of the case and to the Defendant. Booker did this by requiring courts to consider factors other than just the guideline range provided by United States Sentencing Guidelines. In fact, under § 3553 (a), courts are required to sentence below the range if such a sentence would be sufficient to achieve the purposes of punishment.

In this memorandum, Defendant Sean Michael Clark respectfully requests this court to consider several important circumstances of this case in order to fashion and impose a just sentence. First, Defendant's cooperation with the government - which has been addressed in a §5K.1 motion - was timely, extensive, thorough, and contributed to or resulted in conviction or pleas of guilty of other defendants in this case. As noted in the presentence report the Defendant provided **substantial assistance** to the Government in this case. At his own expense he drove from South Florida to Savannah to meet with prosecuting attorneys and give a proffer interview, which was followed by his trial testimony against codefendant Najam Azmat. As this Court knows, Dr. Azmat was convicted.

Second, the Defendant continues to cooperate with the US Attorney's office in the Southern District of Florida in the ongoing investigation and prosecution of defendants engaged in similar activities in the South Florida area. In fact, it is anticipated the Defendant will be an essential witness in a case soon to be tried by AUSA Donald Chase in Miami. It is anticipated AUSA Chase will also ask this Court to grant leniency to the Defendant. Such a request would be based upon the Defendant's continued ongoing involvement in the South Florida case.

Third, since the Defendant's arrest in December 2013 (and subsequent pretrial release) he has complied in all respects with the conditions of bond and, in addition, has contributed to his community by his very involved participation at a local drug rehabilitation facility. Not only has the Defendant attempted to rehabilitate himself but also he has attempted to help others become drug-free. The success and merit of these efforts has been documented by the numerous letters, which are attached to this memorandum and which have been submitted in support of Defendant's plea for leniency in this case.

The totality of the circumstances warrants a sentence substantially below that recommended by the probation officer in her pre-sentence report. But perhaps what is even more important is that this Court has an opportunity to fashion a sentence by which the defendant will continue to benefit the community by participating in community drug rehabilitation programs in South Florida. Defendant's commitment to these programs has been demonstrated and comes from his very sincere desire and determination to overcome his own drug addictions.

**PROCEDURAL BACKGROUND**

A Grand Jury returned the original indictment in this case on February 7, 2013 (4:13-CR-0028). On December 9, 2013 Clark pleaded guilty to Count I of the Superseding Accusation (4:13-CR—201-1), which charged him with conspiracy under 18 USC §371. Clark was one of six defendants in this case, which involved the establishment of "pill mills" in both the Southern and Northern Districts of Georgia. The impetus for the Georgia clinics came from the operation of similar facilities with which the Defendant had been involved in South Florida.

**FASHIONING AN APPROPRIATE SENTENCE**

As a result of his plea Sean Michael Clark stands before this Court to be sentenced for the crimes he has committed. The sentence should be one which not only

will appropriately punish the Defendant but will also satisfy statutory and guideline requirements while encouraging his successful rehabilitation.

**POST-BOOKER SENTENCING CONSIDERATIONS**

Thanks to **Booker**, the sentencing guideline range is no longer binding on this court. Rather it is only one of five factors to be considered. The other four factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentencing disparity; and (4) the need to provide restitution. 18 U.S.C.§ 3553 (a)(1), (a) (3), (a) (6)-(7).

In considering the Section 3553 (a) factors, the sentencing guidelines are to be given no more or less weight than any other factor. (**US V Jaber**, 362 F. Supp. 2d. 365) perhaps even more important however is that **Booker** establishes a new, independent limit on the sentence that may be imposed. The primary sentencing mandate of Section 3553 (a) states that courts must impose the minimally sufficient sentence to achieve the statutory purposes of punishment - justice, deterrence, incapacitation, and rehabilitation: *"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in {18 USC § 3553 (a) (2)}."*

This so-called parsimony provision is not simply a factor to be considered in determining sentence; it represents a cap above which the court is statutorily prohibited from sentencing - even when a greater sentence is recommended by the sentencing guidelines. (See **United States v Denardi**, 892 F. 2d 269,276-77)

**PRE-SENTENCE REPORT**

As correctly noted, the maximum term of imprisonment under the count to which the defendant entered his plea is five years. The guideline provisions, based upon a total offense level of 37 and a criminal history category of III, suggest that an imprisonment range of 262 months to 327 months. However, because the statutorily

authorized maximum sentence is less than the minimum of the guideline range, the guideline term of imprisonment would be 60 months. (USSG§ 5G1.1(a))

As also noted in the Presentence Report under the statutory provisions the defendant is eligible for not less than one nor more than five years of probation. Contrary to the statutory provisions, the guideline provisions declare the defendant ineligible for probation and the probation officer is recommending a sentence of 48 months confinement followed by three years supervised release.

**SENTENCING FACTORS AS APPLIED TO DEFENDANT CLARK**

Aside from the sentencing guideline range, three of the Section 3553(a) factors are particularly relevant in this case. Those factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; and (3) (3) the need to avoid unwarranted sentencing disparity.  18 USC §3553 (a)(1)(2) & (3)

A -1  **The Nature and Circumstances of the Offense**

The first factor this Court must look at is the nature and circumstances of the offense. The nature and circumstances of the instant offense are clear but need to be examined from Clark's perspective. Defendant Clark and the other defendants all took part in the operation of a pain clinic dispensing prescription medications without legitimate medical need. The clinic set up in the Southern District of Georgia was a spin-off from similar clinics in Florida. Those clinics were set up by persons other than Clark; including one Louis Tremetera, a prominent businessman in Boca Raton, Florida. Tremetera was an extremely wealthy businessman with a charismatic personality whose legitimate business and financial successes greatly impressed Clark.

Tremetera gave Clark his first solid (and legal) job in Florida. Through close contact and conversations they became friends.  Clark even saw Tremetera as a "father figure".  Tremetera, who escaped prosecution in a related prosecution when his solely owned corporation entered a guilty plea and agreed to a **two million dollar forfeiture**

(US v Nuvest, LLC, 4:13-CR-047), used his skills and charm to convince Defendant Clark that he could make easy money working for him by helping to open a pain clinic in South Georgia. At the time of his initial involvement, Clark was heavily addicted to opiates and other drugs. Although Defendant Clark knew the difference between right and wrong, his addiction to opiates and other drugs skewed his judgment.

Initially Clark believed what he would be doing might be illegal; however Tremetera and others assured him that the business would be legal in Georgia because of a lack of State regulation.  In addition, Tremetera advised Defendant Clark that the clinic would have licensed physicians on staff who would see the patients and make the determination as to whether or not the patient would receive pain medications.

Clark's first duty was to search for a site location after which he would move into marketing. Clark located the premise in west Chatham County and signed the lease. <u>Tremetera supplied all of the money used to open and operate the clinic</u>. The location used to operate the clinic was chosen due to the fact that it had been previously used as a medical center and therefore was ready to occupy without extensive renovations.

Once the clinic was opened, Defendant Clark's duties consisted of traveling to different locations at which other pain clinics operated to distribute flyers into the hands or onto windshields of potential new customers. Clark was not involved in the daily operation of the clinic itself. Clark ultimately knew and appreciated the fact that what he was doing was illegal and wrong, but under the lash of his own addiction, he knowingly continued to participate in the conspiracy.

**A-2** <u>Defendant's History and Characteristics</u>

The second factor this Court must look at is the history and characteristics of the defendant. Sean Michael Clark was born August 17, 1979, in Long Island New York to the union of Kevin and Patricia Clark. He was the oldest of three (3) children.  His parents were twenty-four (24) years of age when he was born. Both of the defendant's grandfathers served the United States during World War II as combat veterans.  From birth, the defendant's family instilled strong family values as well as good morals.  It was not until later in life that his father would die as a result of substance abuse.  Both

parents worked civil servants.  Clark's father earned the rank of Captain in the Upton Federal Police Department.  His mother spent thirty-seven (37) years working for social services beginning as an entry level employee; finally retiring in March 2013 as the Director of Research and Management of a county with a population in excess of two million.

Clark was placed in parochial school at an early age was encouraged to participate in local church activities such as sports, plays, music, and the like.  As a kid he was always surrounded by adults who loved and cared for him.  The neighborhood he spent his formidable years in was a working class-blue-collar neighborhood where everyone knew each other.  By age twelve, Clark was working summers for his uncle delivering Pepsi-Cola.  The work was demanding and required him to begin the day well before sunrise and work lasted until early evening.  This early experience gave him a strong work ethic.  The area his uncle serviced was in was a very poor, predominantly minority filled part of Long Island.  Although many of the defendant's friends went off to college, Clark enjoyed the hard work and the sense of empowerment it gave him; eventually he would have his own Pepsi route. Working at a young age every summer and on weekends provided him a sense of responsibility and allowed him to earn his own money.  At the same time, while in school, he was involved in football, lacrosse, and extra-curricular scholastic activities.

Throughout high school Clark was basically a good kid with good friends. However, during these years he began to experiment with alcohol and marijuana.  At the time, like so many others his age, Clark thought alcohol and marijuana were harmless.  He was completely unaware of the havoc drugs and alcohol would present later in his life.

The defendant was first introduced to opiates in high school as a result of sports injuries, which required surgery.  Post-surgery, the defendant was prescribed pain medications by his doctor and took them as prescribed with no ill effect.  Being able to function was a curse because it allowed his addiction to progress and never forced any major changes to straighten out his life. Things were still "good"; alcohol was acceptable to a degree around his family who did not know the extent of his growing

addiction. Somehow Clark still maintained a relatively healthy social life with decent hard working people as friends.

After High School Clark moved into an apartment close to his family and attended community college in order to please his mother. Shortly after while he was in his early twenties he injured his back and was again prescribed pain medication. It was at this time the defendant became chemically dependent on opiates. This was the gateway into a world of drugs.

Before long, Clark began to experiment with harder drugs such as cocaine and more opiates. He used these medications like every other substance he had ever touched, excessively from day one. The excitement of using had changed into desperation. On numerous occasions the defendant sought help with his addiction but to no avail. Although he had been raised with high ideals and morals, the defendant found himself living a life without purpose. Consequence after consequence befell him and yet nothing changed. Before long his life was completely consumed by drugs. The defendant lived to use and used to live. The disease of addiction blinded him to the truth and the consequences he endured. He saw no way out even after finding his father's dead body floating in a swimming pool after experiencing a drug overdose.

After an intervention by his family and friends, the defendant moved to Florida and sought help through treatment. When he arrived in Florida Clark was extremely sick from drug withdrawal. The defendant's mother had made it perfectly clear to him that he was on his own and needed to grow up and to get a job right away. She told him to stay clean or go live in a homeless shelter. Luckily, the defendant was instilled with a good work ethic and a belief that he could make it on his own. After being in Florida for six months, Clark went home for his cousin's wedding feeling good. He was healthy and off drugs.

While in New York Clark "fell in" with some old friends and when he returned to Florida he had suffered a relapse. Trying to overcome his addiction Clark looked for a new job. Within weeks he found himself working for a debt settlement company where he was introduced to his co-conspirator, Louis Tremetera. Clark looked up to Tremetera and was impressed with the lifestyle Tremetera was living. More

importantly, Tremetera had purported that he had over ten (10) years of sobriety, which was something Clark viewed as admirable. At first Clark believed that Tremetera was a legitimate businessman with many successful ventures to his credit. In short, Defendant Clark was taken in by Tremetera and led to believe Tremetera could improve his life.

As it developed, meeting Tremetera and being arrested as a result of his involvement with the pain clinic became the turning point in Clark's life.

### A-2-1   Defendant's Cooperation

The Defendant's cooperation as a witness in this case must be considered by this court as evidence of his willingness to accept and participate in rehabilitation. "Cooperation is a laudable endeavor that bears a rational connection to the defendant's willingness to shape up and change his behavior." (**Roberts v United States**, 445 US 552; 1980) in order to assist the government Clark drove from South Florida at his own expense to meet with the AUS attorney, on a Saturday, to go over and prepare for his testimony the following week. His testimony in this case assisted the government in its prosecution of Dr. Azmat. The government has recognized the importance of his assistance and is termed it **"substantial"**. Accordingly, the government has filed a motion for downward departure under section 5K 1.1 of the sentencing guidelines.

Not only has the defendant cooperated in the Southern District of Georgia but he is also an essential witness in a similar prosecution in the US District Court for the Southern District of Florida in Miami.

Clark did not lightly undertake the decision to cooperate with the government. Many of the codefendants in this case and many of the codefendants in the Florida case were longtime friends and business associates. Nonetheless, the impact of his wrongdoing has become clear to the defendant and from the very beginning of this case he indicated a willingness to cooperate. When the opportunity was presented the defendant did not hesitate but immediately offered to share information with the government and to testify as needed. Several of the codefendants also pleaded guilty after learning of the defendant's change of plea.

**A-2-2   Defendant's Involvement in Drug Rehab**

As noted above, the defendant has had a significant history of drug abuse. Over the years he has made numerous attempts to become drug-free. He had very little success until his release on bond in this case. Having realized his wrongdoing in this case Sean Clark decided to turn his life around. Immediately upon his release from incarceration he became involved in drug rehab programs in Boca Raton.  Not only did Clark's get involved as a patient, but he became a counselor as well. The defendant was released on March 7, 2013 and for over a year he has been actively involved in drug rehabilitation. He has remained drug-free and sober during this period of time. The impact his work his has had on fellow drug users is documented by the letters written or signed by them and attached to this memorandum as exhibits.

**B   The Kinds of Sentences Available**

As noted in paragraph 64 of the Presentence Report, the statutory maximum sentence which this court can impose his five years (18 USC §371). In this case there is statutory authority for the court to impose straight probation {18 USC §3583(b)(2)} even though the sentencing guidelines suggest the defendant would be ineligible for straight probation. Therefore the court has the power to fashion a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment.

**C   The Need to Avoid Sentence Disparity**

The original indictment in this case was returned on February 7, 2013 naming the Defendant, along with five co-defendants, charged with 53 counts of various offenses under Federal Law, including conspiracy, maintaining a drug involved premises, unlawful dispensation of controlled substances, distribution of controlled substances, conspiracy to launder monetary instruments and aiding and abetting.  There were also forfeiture counts in the indictment.

Approximately three weeks later, on February 27, 2013 an Information was filed in the US District Court for the Southern District of Georgia under docket # 4:13-CR-0047.  In the original information, Nuvest, LLC was charged with one count of having "knowingly and intentionally opened, leased, used and maintained a place known as East Health Center, located at 626 US Highway 80, Garden City, Georgia, for the purpose of dispensing schedule II, III and IV controlled substances without legitimate medical purpose, in violation of Title 21, United States Code Section 856(a)(1)."

**This is the same pill mill facility involved in the case now under consideration by this Court.**

On April 8, 2013 the Government filed a superseding information (document 4 under 4:13-CR-047) in which the Government added a forfeiture count seeking to have Nuvest forfeit Two Million Dollars ($2,000,000).

Just three days later on April 11, 2013, Nuvest, LLC pleaded guilty to maintaining the pill mill clinic known as East Health Center in Garden City.

Nuvest, LLC is a Florida corporation created by the filing of electronic Articles of Incorporation on January 12, 2011. The President of Nuvest, LLC was Lewis Tremetera who was also President of 6221 Enterprises, Inc., which was the Corporate Manager of Nuvest, LLC.

As part of the plea agreement Nuvest agreed to forfeit Two Million Dollars ($2,000,000) and in return the Government agreed to "forbear prosecution of Defendant and its Officer Lewis Tremetera within the Southern District of Georgia, for any other

federal offense related to the violation alleged in the superseding information"… (The plea agreement is document 7 under 4:13-CR-0047)

The Government also agreed to obtain the agreement of the United States Attorney for the Southern District of Florida and the State Attorney for Palm Beach County, Florida not to prosecute or initiate forfeiture proceedings against Nuvest, LLC or Lewis Tremetera for offenses related to their investment in East Health Center in the Southern District of Georgia or Total Medical Express (and clinics related thereto) in the Southern District of Florida and Palm Beach County, respectively.

The Government further agreed that there was no restitution to be required and that there was no fine to be imposed. **In other words, payment of the Two Million dollars absolved Tremetera of all sins committed.**

The Government also simultaneously agreed to dismiss three civil actions that had been filed in the Southern District of Georgia involving Nuvest, LLC and others.

Immediately prior to the entry of the plea the Defendant, LLC, by and through its attorney, Harry D. Dixon, Jr. entered into a Consent Order of Forfeiture (Document 13, under 4:13-CR-0047) forfeiting to the Government the Two Million Dollars ($2,000,000) specified in the plea agreement, to be paid within thirty days of the judgment.

As to the Defendant Sean Michael Clark, who was recruited by and was a "go-fer" for Lewis Tremetera for what he initially believed to be a legitimate business enterprise, the Government initiated a series of financial account seizures beginning on May 31, 2011 on which date the Government seized $35,901.83; on June 1, 2011 the

Government seized $15,985.83; on June 1, 2011 the Government seized $2,080.07; and, on June 1, 2011 the Government seized $2,042.67. The total amount seized from various accounts owned or maintained by the Defendant Sean Michael Clark totaled **$56,010.40**.

Notwithstanding the seizure and forfeiture of the monies hereinabove described, the Government filed an indictment against Sean Michael Clark and others and tendered plea offer that could result in a sentence of five years confinement.

It is respectfully submitted that under the circumstances when comparing both cases, imprisonment of Sean Michael Clark, or any codefendant for that matter, would create a gross disparity in sentencing as regards Nuvest and Louis Tremetera. The government saw fit to give Tremetera a "get out of jail pass" in exchange for an agreed-upon payment of two million dollars. If all men are indeed equal in the eyes of the law then Sean Michael Clark should not go to prison. It should be enough that he live the next five years on probation under the strict supervision of the US Department of Probation.

**DEFENDANT'S SENTENCE REQUEST**

Sean Michael Clark is asking this court to sentence him to a period of 60 months probation. It is respectfully submitted that such a sentence would be sufficient but not greater been necessary to achieve the statutory purposes of punishment.

The defendant's offense is serious and he has admitted his complicity in the criminal enterprise; but it should be noted that he entered into this venture through channels that were initially legal. His first job with Tremetera was a legal job. He entered into the conspiracy by virtue of having been employed by Tremetera and not by coming to a conscious decision to commit a crime.

The defendant's offense is serious and his actions had the potential to cause harm to a great number of people and in fact a great number of drug users were probably adversely impacted because of defendant's conduct. Defendant's commitment and dedication to drug rehab programs as evidenced by his recent activities should be taken into account as partial atonement for his criminal activity.

At the time the defendant embarked upon this endeavor the regulatory laws of the state of Georgia were less clear; in fact that is why a decision was made to move from Florida to Georgia. The unique regulatory backdrop in this case certainly does not excuse defendant's conduct. But it is relevant in assessing his moral blameworthiness and ultimately in determining his sentence. While defendant has fully acknowledged the illegality of his conduct, the unique factual circumstances relating to the regulatory uncertainty should be an important consideration in assessing the nature of the offense.

The concept of a pill mill clinic is repugnant; but the Court should take into account that the offense was nonviolent in nature, no weapons were used, no threats were uttered, and there were no "unwilling victims". In fact those persons seeking the drug distribution points were themselves committing unlawful acts.

It is respectfully submitted that in order to achieve rehabilitation as well as to impose a just punishment this court need not incarcerate Sean Michael Clark.

Federal law mandates a number of conditions for both probation and supervised release {18 USC§ 3563(a)}. This Court has discretion to impose such conditions that may reasonably be related to the sentencing factors of §3553 (a) (1) & (2). The Court's discretionary conditions must involve only such deprivations of liberty or property as are reasonably necessary to achieve legitimate sentencing purposes.

**CONCLUSION**

For the reasons hereinabove stated, Sean Michael Clark respectfully requests that this honorable court sentence him to a period of NOT MORE than and PREFERABLY LESS than 60 months probation followed by supervised release if required. Defendant requests that his son is also include a requirement that he maintain his current drug

treatment program and that he continued to participate in community drug rehabilitation programs in a volunteer capacity. Further, defendant requests that his volunteer work be given such credit as may be appropriate in regards to his obligations under any probation requirements.

        **RESPECTFULLY** submitted this 28th day of June 2014.

        PHILLIPS ROBERTS & CARSON

        *Bobby Phillips*
        _____
        BOBBY PHILLIPS, 576700
        Attorney for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v | ) | Docket No.: 4:13-CR-0201-1 |
| | ) | |
| SEAN MICHAEL CLARK, | ) | |
| Defendant | ) | |

**CERTIFICATE OF SERVICE**

This is to certify that I have on this day served all parties in this case in accordance with the Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing in this Court.

This 1st day of July 2014.

PHILLIPS & ROBERTS

*s/ Bobby Phillips*

_____
BOBBY PHILLIPS, 576700
Attorney for Defendant

402 E. Liberty Street
Savannah, Georgia 31401
912-232-0081
Fax 912-232-9070
email bplaw@msn.com